UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CAITLIN SNOW, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | No. 1:15-cv-145-GZS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| *Acting Commissioner of Social Security,* ) | |
| ) | |
| *Defendant* ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that, in violation of Social Security Ruling 85-15 ("SSR 85-15"), the administrative law judge neglected to cite examples of occupations/jobs she could do and the numbers in which such jobs exist. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 4-6.[2] I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff also appeared to be raising a separate issue that, pursuant to *Lancellotta v. Secretary of Health & Human Servs.*, 806 F.2d 284 (1st Cir. 1986), the administrative law judge did not adequately account for stress in determining her mental residual functional capacity ("RFC"). *See* Statement of Errors at 5; *see also* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 5-7. However, at oral argument, her counsel

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of generalized anxiety disorder, Finding 3, Record at 22; that she had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could, on a sustained, competitive basis, understand, remember, and carry out simple instructions, use appropriate judgment in making simple work-related decisions, respond appropriately to coworkers, supervisors, and usual work situations not involving the public, and adapt to occasional changes in the work setting, Finding 5, *id*. at 24; that, considering her age (25 years old, defined as a younger individual, on her alleged disability onset date, December 15, 2010), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 26-27; and that she, therefore, had not been disabled from December 15, 2010, through the date of the decision, December 10, 2013, Finding 11, *id*. at 27.  The Appeals Council declined to review the decision, *id*. at 3-5, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

---

clarified that she raises no challenge to the administrative law judge's RFC finding and that she cited *Lancellotta* in support of the proposition that a failure to follow SSR 85-15 is remandable error.

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

During the plaintiff's hearing, the administrative law judge asked vocational expert Warren D. Maxim whether the RFC limitations that he ultimately adopted would "significantly erode the unskilled work base[.]" Record at 67. Maxim replied, "The only thing that would erode it, your honor, would be the limits on public contact." *Id*. at 67-68. He added, "It leaves a lot of unskilled work." *Id*. at 68. The administrative law judge did not ask Maxim to identify specific jobs that a person with that RFC could perform or to provide numbers in which those jobs exist in the regional or national economy. *See id*. at 68-69.

Using the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, as a "framework," the administrative law judge found that the plaintiff was not disabled, explaining:

> . . . If [a] claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> The [plaintiff's] ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the [plaintiff's] age, education, work

> experience, and [RFC]. The vocational expert testified that the limitations described above do not significantly erode the unskilled occupational base for an individual with the [plaintiff's] vocational profile.
>
> ***
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the [plaintiff's] age, education, work experience, and [RFC], the [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

*Id.* at 27.

The Grid section on which the administrative law judge relied, section 204.00, provides:

> The [RFC] to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work – either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

Grid § 204.00.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet her burden of showing that there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she

can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989). Whether the commissioner may rely on the Grid as a "framework" in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet her Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ [administrative law judge] must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

At oral argument, the plaintiff's counsel contended that because the administrative law judge explicitly relied solely on vocational testimony at Step 5, rather than the Grid or any other alternative source such as a Social Security Program Operations Manual System ("POMS") section cited by the commissioner, *see* Opposition at 3-5, he was required by SSR 85-15 to cite examples of jobs the plaintiff could perform and the numbers in which such jobs existed. *See also* Statement of Errors at 4-6.

SSR 85-15 provides, in relevant part:

Given no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base – the entire exertional span from sedentary work through heavy (or very heavy) work – is reduced by the effects of the nonexertional impairment(s). This may range from very little to very much,

5

> depending on the nature and extent of the impairment(s).  In many cases, a decisionmaker will need to consult a vocational resource.
>
> ***
>
> The second issue is whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience. . . .  If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience. . . .  The assistance of a vocational resource may be helpful.  *When vocational resources are used and the decision is adverse to the claimant, the determination or decision will include: (1) citations of examples of occupations/jobs the person can do functionally and vocationally, and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country*.

SSR 85-15, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991, at 346 (emphasis added).

This is an issue of first impression in this district.  On its face, this passage *could* be read to require an administrative law judge to cite specific jobs and job numbers any time that the services of a vocational expert are used.  However, the better reading is that it does not require such findings in situations in which an administrative law judge supportably determines, whether through the use of a vocational expert and/or citation to other evidence or authority, that a claimant's nonexertional limitations do not significantly erode the unskilled work base, permitting the use of the Grid as a framework.  Findings as to specific jobs and job numbers in those circumstances would be redundant: as SSR 85-15 recognizes, "If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience." *Id*.  *See also, e.g*., Grid § 200.00(b) ("The existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules; *i.e*., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy[.]").

In this case, the administrative law judge essentially relied on the Grid; that is, he concluded, based on the testimony of the vocational expert, that the plaintiff's nonexertional impairments did not significantly erode the unskilled occupational base, permitting reliance on the Grid to meet the commissioner's burden of demonstrating that the plaintiff retained the capacity to perform jobs existing in significant numbers in the national economy. *See* Record at 27.

As counsel for the commissioner contended, the vocational expert's testimony supports this proposition. The vocational expert indicated that only one of the plaintiff's mental limitations would erode the unskilled occupational base – the limitation on public contact – but that, even with that limitation, there remained "a lot of unskilled work." *Id*. at 67-68. A fair reading of this testimony is that none of the plaintiff's limitations *significantly* eroded the unskilled occupational base. No more was required to meet the commissioner's Step 5 burden.[3]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

---

[3] The commissioner contended that, in any event, both SSR 85-15 and POMS § DI 25025.010, *Using Rule 204.00 as a Framework for a Determination*, make clear that a preclusion from dealing with the public does not prevent the use of the Grid as a framework when, as here, a claimant has no exertional limitations, and that this court observed, in *Swormstedt v. Colvin*, No. 2:13-cv-00079-JAW, 2014 WL 1513347, at *6 (D. Me. Apr. 16, 2014), that nearly identical limitations did not erode reliance on the Grid as a framework. *See* Opposition at 3-5. At oral argument, the plaintiff's counsel protested that the commissioner's reliance on authorities other than the vocational testimony relied on by the administrative law judge offended the so-called *Chenery* rule, pursuant to which "a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 135 S. Ct. 2699, 2710 (2015) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943)). Counsel for the commissioner rejoined that there is no *Chenery* violation when, on appeal, the commissioner merely cites additional authorities in support of the basis for the administrative law judge's decision (in this case, that the plaintiff's nonexertional limitations did not significantly erode the unskilled occupational work base). I need not resolve this issue, because, as noted above, I conclude that the administrative law judge's reliance on the vocational expert's testimony sufficed to enable his use of the Grid as a framework.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of December, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge